O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| FRANCISCO LAGARA MAYO, | Case No.: 5:25-cv-3003-MEMF-E |
|---|---|
| Petitioner, | **ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 5]** |
| v. | |
| F. SEMAIA et al., | |
| Respondents. | |

Before the Court is the Ex Parte Application for a Temporary Restraining Order filed by Petitioner Francisco Lagara Mayo. Dkt. No. 5. The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons stated herein, the Motion is GRANTED.

I. **Background**

   A. **Factual Background[1]**

On August 10, 1996, Mayo was born in Estero Verde, a city in Mexico. Petition ¶ 4. In 2002, at age five, Mayo arrived in the United States, where he has lived ever since. *Id.* ¶ 5. Mayo has never returned to Mexico. *Id.* ¶ 6.

Mayo was granted a U-Visa because Mayo's mother was a victim of a qualifying crime, but Mayo's status has never been adjusted to lawful permanent resident as he failed to timely submit an application to do so. *Id.* ¶ 5.

In 2016 or 2017, Mayo was convicted of driving under the influence of alcohol. *Id.* ¶ 8; Dkt. No. 7-1 ("Castellanos Decl.") ¶ 5. Following his conviction, ICE arrested him and commenced removal proceedings against Mayo. Petition ¶ 8. On March 21, 2017, Mayo sustained a second criminal conviction.[2] Castellanos Decl. ¶ 6. He was convicted of disorderly conduct (intoxication) in violation of section 647(f) of the California Penal Code. *Id.* On September 21, 2017, an immigration judge found that Mayo demonstrated that he neither poses a danger to the community nor such a significant flight risk that he could not be released after payment of an $8,000 bond. *Id.* ¶ 9. Shortly thereafter, Mayo was released upon payment of the bond and was required to periodically check in with ICE. *Id.* ¶ 9.

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] Mayo does not discuss this background in the Petition or the TRO. Respondents have submitted the Declaration of Iris Castellanos concurrently with the Opposition, which alleges the factual basis described. In Reply, Mayo does not dispute or otherwise address the factual allegations.

2

On January 23, 2019, Mayo sustained a third criminal conviction.[3] *Id.* ¶ 8. He was convicted of driving under the influence of alcohol in violation of section 23152(b) of the California Vehicle Code. *Id*. He was sentenced to forty-five days in jail. *Id.*

On July 5, 2023, an immigration judge denied Mayo's application for asylum and related protection, as well as his petition for cancellation of removal on the basis that Mayo's removal would result in unusual hardship to Mayo's U.S. citizen mother. Petition ¶ 10. The immigration judge, however, did grant Mayo's application for voluntary departure. *Id.* Mayo timely appealed. *Id.*

On February 26, 2024, Mayo sustained a fourth criminal conviction.[4] Castellanos Decl. ¶ 12. Mayo was convicted of driving under the influence of alcohol and was sentenced to 120 days in jail. *Id.*

On October 20, 2025, Mayo reported to his regular ICE check-in. Petition ¶ 11. He was detained without any notice, a hearing, or an on-the-record determination before a "neutral arbiter." *Id.* At the time of Mayo's detention, the government had not demonstrated any materially changed circumstances before a "neutral arbiter." *Id.*

### B. Procedural History

On November 9, 2025, Mayo filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See generally* Petition. This Court instructed Mayo that, to the extent that he sought preliminary relief in the form of a Temporary Restraining Order or a Preliminary Injunction, he should submit separate briefing on the matter of preliminary relief. *See* Dkt. No. 4. Mayo did so and filed the instant Application on November 24, 2025. *See generally* Dkt. No. 5 ("Application").

---

[3] Mayo does not discuss this background in the Petition or the TRO. Respondents have submitted the Declaration of Iris Castellanos concurrently with the Opposition, which alleges the factual basis described. In Reply, Mayo does not dispute or otherwise address the factual allegations.

[4] Mayo does not discuss this background in the Petition or the TRO. Respondents have submitted the Declaration of Iris Castellanos concurrently with the Opposition, which alleges the factual basis described. In Reply, Mayo does not dispute or otherwise address the factual allegations.

The Government filed its opposition on November 25, 2025. *See generally* Dkt. No. 7 ("Opp."). Mayo filed his reply on November 26, 2026. *See generally* Dkt. No. 9 ("Reply").

**II.     Applicable Law**

    **A.  Temporary Restraining Orders**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

    **B.  Habeas Petitions in the Immigration Detention Context**

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596

U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.'" *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

The Department of Homeland Security has the authority to revoke a noncitizen's bond or parole "at any time," even if that individual has previously been released. 8 U.S.C. § 1226(b); 8 C.F.R. § 242.2(c). But "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). And the BIA has further limited this authority: "[W]here a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). In practice, the DHS re-arrests individuals only after a "material" change in circumstances. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Certain statutes offer procedural protections to immigrants who are released from ICE custody and then redetained. Namely, when an immigrant is subject to a final order of removal, the immigrant may have their release revoked "if, on account of changed circumstances, the [Immigration and Naturalization Service] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). But an immigrant is not subject to a final order of removal while the immigrant appeals to the Board of Immigration Appeals. 8 C.F.R. § 1003.6.

### III. Discussion

#### A. Mayo does not appear to be subject to a final removal order.

The parties dispute whether Mayo is subject to a final removal order. The Government argues that he is. Opp. at 1 ("Petitioner, a Mexican national who is subject to a final removal order . . ."). Mayo argues that he is not. Reply at 3 ("The Petition and the TRO [are] very clear that Petitioner's appeal is still pending before the BIA and that [Mayo] is not subject to a final order.").

1  This Court considers this a threshold question because, as discussed above, the level of protections
2  to which Mayo is entitled depend in part on whether he is subject to a final removal order. Based on
3  the parties' arguments and the applicable law, this Court finds that Mayo is not subject to a final
4  removal order at this time.

5        The governing law is 8 C.F.R. § 1241.1. This states that an order of removal becomes final
6  (a) upon dismissal of an appeal by the BIA, (b) upon waiver of an appeal by the respondent; (c) upon
7  expiration of time allotted for an appeal, assuming the respondent does not appeal within that time;
8  (d) if certified to the BIA or Attorney General, upon the date of the subsequent decision ordering
9  removal; (e) if an immigration judge orders an immigrant removed in their absence, immediately
10 upon the entry of the order; or (f) if an immigration judge issues an alternate order of removal in
11 connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or
12 upon the failure to timely post a voluntary departure bond. *Id.* Mayo argues that, as his appeal
13 remains pending before the BIA, he remains not subject to a final order of removal. Reply at 3.
14 Mayo argues—and Respondents do not dispute—that he has timely submitted his appeal brief on
15 June 21, 2024, but that the Government has not yet filed an opposition (which was due on July 12,
16 2024). Application at 10. It also does not appear that the BIA has rendered a decision on the appeal.
17 *Id.*

18       It does appear that Mayo's circumstances do not implicate any of the conditions that, under §
19 1241.1, would make removal final. Nor does the Government offer any argument in support that the
20 removal order is final and operative at this time.[5] *See* Opp. at 2. In sum, because the Court does not
21 find that any of the § 1241.1 conditions are present here, the Court finds that Mayo is not presently
22 subject to a final order of removal.

---

[5] The Government appears to concede the removal order's lack of finality, *see* Opp. at 6 ("Petitioner is subject to a final order of removal (*pending BIA appeal*)." (emphasis added)), although at one point, the Government asserts that Mayo "conced[es] that he has a final removal order." Opp. at 2. It is clear that Mayo has not conceded that he is under a final removal order, *see* Reply at 2; it appears that the assertion that Mayo concedes he is subject to a final removal order may have been the result of a clerical error just like the description of Mayo's argument at page 1. See infra note 6.

### B. Applying the *Winter* factors, Mayo is not entitled to a temporary restraining order.

This Court next turns to the *Winter* factors. Mayo argues that his rearrest—absent an operative final removal order, and prior to receiving a hearing before a "neutral arbiter" or any demonstrated material change in circumstances—violated his due process rights. For the reasons below, at this preliminary stage, this Court finds that Mayo has not demonstrated a likelihood of success. For that reason, Mayo is not entitled to preliminary relief.

On the first *Winter* factor, Mayo argues that he is likely to succeed on his claim that the Due Process Clause prevents Respondents from rearresting him without first providing a predeprivation hearing before a "neutral arbiter" where the government demonstrates that a material change in circumstances has occurred.[6] Application at 11–12. It appears that by "neutral arbiter," Mayo means either an immigration judge or a district judge, as opposed to an ICE officer or the District Director. For the reasons below, this Court finds that Mayo is not likely to prevail on the merits on this argument.

"'The Fifth Amendment entitles [noncitizens[7]] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

---

[6] Respondents also state that Mayo argues that "the government did not comply with the procedural requirements of 8 C.F.R. § 241.13(i) in revoking his release and redetaining him, allegedly failing to provide him with any reasons for his redetention." Opp. at 1 (citing Dkt. No. 6 at 9). This appears incorrect: Dkt. No. 6 is a text-only entry by this Court, not a submission by Mayo. Moreover, the Application does not cite § 241.13, and in Reply, Mayo argues that he "is not claiming he was on an order of supervision and that the government did not comply with the procedural requirements of 8 C.F.R. § 241.13(i) in revoking his release and redetaining him." Reply at 2. Instead, this Court understands the question as whether petitioner, as someone *not* subject to a final order of removal and who was in the process of appealing a removal order, is entitled to the preliminary relief he has requested under the Due Process Clause.

[7] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see* Alien and Noncitizen, American Heritage Dictionary of English Language 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

7

The Ninth Circuit has not defined the contours of what procedural safeguards are due to noncitizens facing redetention following release from ICE custody. But the relevant statutes do not appear to entitle an immigrant petitioner facing the revocation of bond to a change-in-circumstances *hearing*. *See* 8 U.S.C. § 1226(d); 8 C.F.R. §236.1(c)(9). Moreover, *Matter of Sugay*, 17 I. & N. Dec. at 640, similarly does not establish that a noncitizen facing redetention is constitutionally entitled to a *hearing*. Instead, the Court there noted that the noncitizen is subject to redetention in the "discretion of the District Director," and may appeal the amount of bond set to "assur[e] that the District Director d[id] not act arbitrarily or capriciously." *Id.* at 640. Taken together, then, this Court does not find statutory or precedential support for the proposition that due process requires that a noncitizen facing bond revocation is entitled to a *predetention hearing* before an immigration judge or a district judge in this instance.

The Supreme Court has outlined three factors to be considered in determining what amount of due process is appropriate: (i) the private interest that will be affected, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court finds that these three factors weigh against finding that Mayo is entitled to the additional procedural safeguards requested—namely, a hearing before a "neutral arbiter" and an on-the-record determination that a material change in circumstances warrants Mayo's redetention.[8]

With respect to the first factor, it is undisputed that Mayo has a liberty interest in remaining out of custody.

With respect to the second factor, Mayo has not demonstrated that he is likely to succeed on showing a risk of erroneous deprivation of his liberty interest. It is generally true that, as Mayo notes, the risk of an erroneous deprivation of liberty may increase where a detained petitioner has

---

[8] Mayo's proposed additional safeguards ask this Court to instruct that the "neutral arbiter" presiding over Mayo's hearing should use a "clear and convincing evidence" standard in finding that a material change in circumstances warrant Mayo's redetention. Application at 3. Mayo cites no authority and makes no argument addressing why this standard of proof is the appropriate one. Nor has this Court found evidence that other courts facing analogous questions have imposed such a standard on the Government. This Court is not, therefore, inclined to adopt it.

not received an opportunity to be heard. But Mayo concedes that redetention can be justified based upon a change in circumstances, and here he is unlikely to succeed in making a showing that there was no change in circumstances. Put another way, even assuming that Mayo is entitled to rely on the government's "implicit promise" that he would only be redetained if he "failed to live up to" the conditions of release, he is not likely to succeed in showing that he did not fail to live up to the conditions of release, in light of the subsequent convictions.[9] Therefore, he is not likely to succeed in showing that he would likely be *erroneously* deprived of his rights without a hearing before an immigration judge or a district judge on whether circumstances have changed.

With respect to the third factor, Mayo is unlikely to succeed in showing that the Government's interest—and, in particular, the burden associated with the requested hearing—would be minimal. Mayo's requested relief—for a "neutral arbiter" to adjudicate that a material change in circumstances has occurred before the Government may decide to redetain—would impose a substantial burden on the Government, particularly in contrast to a mere opportunity to be heard before an ICE Officer or District Director.

As this Court has discussed above, placing such a requirement on the Government would also appear to be at odds with the relevant statutes and binding authority. This Court declines to take the position that due process requires a change-in-circumstances hearing before a judge in instances where the Government revokes bond release after criminal convictions.

In sum, given that neither the statutes nor the case law appear to require the hearing requested and given that it does not appear that Mayo is likely to succeed in showing that he is entitled to such a hearing based upon *Mathews*, the Court finds that Mayo has not met his burden to demonstrate a likelihood of success on the merits. For that reason, the first *Winter* factor is not met.

The Court also finds that under these circumstances, Mayo has not shown serious questions going to the merits. Requests for preliminary relief must be denied when, as here, the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d at 675. Accordingly,

---

[9] The record does not reflect the dates of the conduct underlying the convictions. Whether the conduct itself occurred after the bond determination or only the criminal convictions is immaterial, as it appears that either would constitute changed circumstances if not considered by the immigration judge who originally set bond.

under either formulation of the test for preliminary relief, Mayo is not entitled to the preliminary relief requested and the Court need not address the remaining *Winter* factors.

### IV. Conclusion

In sum, Mayo has failed to demonstrate that he is entitled to preliminary relief.

For the foregoing reasons, Mayo's Application is DENIED.

IT IS SO ORDERED.

Dated: December 5, 2025.

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge